(C. D. 1404)

PITMAN PUBLISHING CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 3, 1952)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Arthur R. Martoccia,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The Pitman Publishing Corporation imported from Canada several thousand sets or collections of blank sheets of ledger paper punched with holes for use in loose-leaf binders. The sets consisted variously of 16, 36, or 60 sheets of paper, with either one or two similarly punched printed sheets of what was described on the invoices as "#101 Folder Stock" serving as a front cover and one or two blank sheets of said "#101 Folder Stock," also punched with holes, serving as a back cover. Accompanying each set of individual sheets and covers and enclosed therewith in a printed kraft envelope was a bound blank book of either journal or ledger paper.

The collector made separate classifications of the sets of loose-leaf paper, including the "Folder Stock," the bound books, and the envelopes. His action with respect to the latter two classes of merchandise is not here in issue. The protests before the court are directed against the collector's classification of the sheets of loose-leaf ledger paper as manufactures of paper, not specially provided for, and his assessment of duty thereon at the rate of 35 per centum ad valorem pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930.

It is claimed in the protests, or by timely amendment thereto, that the merchandise in question is properly dutiable at only 12½ per centum ad valorem, as blank books, which are provided for in paragraph 1410 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, or that it is ledger paper, ruled, weighing over 8 pounds to the ream, such as is provided for in paragraph 1407 (a) of said act, as modified by said trade agreement, at the rate of 1½ cents per pound and 12½ per centum ad valorem.

Except insofar as it is claimed that the merchandise in question is properly dutiable as blank books, no other specific provision for the proper classification of the so-called "Folder Stock" is alleged in either protest. Neither does the record in this case contain any

evidence purporting to show the composition, nature, or character of that portion of the importation here in controversy.

The relevant tariff provisions read as follows:

Paragraph 1407 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade:

Japan paper and imitation japan paper by whatever name known, ledger, bond, record, tablet, typewriter, manifold, onionskin, and imitation onionskin paper, and paper similar to any of the papers specified in paragraph 1407 (a), Tariff Act of 1930 (except paper valued at less than 40 cents per pound and similar to drawing paper); all the foregoing weighing eight pounds or over per ream:

\* \* \* \* \* \* \*

Ruled, bordered, embossed, printed, lined, or decorated in any manner, whether in the pulp or otherwise, other than by lithographic process 1½¢ per lb. and 12½% ad val.

Paragraph 1410, as modified by said agreement:

\* \* \* \* \* \* \*

Blank books and slate books (except diaries, notebooks, and address books), not specially provided for_____ 12½% ad val.

Paragraph 1413:

\* \* \* manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem.

Samples of all of the imported merchandise are in evidence in this case. Plaintiff's exhibit 1 consists of a bound book of blank journal paper, entitled "Journal for Practice Set, Part I," and a set of 36 loose-leaf ledger sheets with two printed covers, one bearing the title "General Ledger for Practice Set, Part I," the other, "Subsidiary Ledgers for Practice Set, Part I," and two plain covers. All are enclosed in an envelope which is marked "Laboratory Material, Part I."

Plaintiff's exhibit 2 is entitled "Laboratory Material, Part II." It consists of the envelope with printed title, a bound blank book of ledger paper marked "Work Sheets for Practice Set, Part II," which was described as an analysis book, a set of 16 loose sheets of journal paper, with a single front and back cover, called "Journal for Practice Set, Part II," and a set of 60 sheets of ledger paper, with a single front and back cover, entitled "Ledger for Practice Set, Part II."

All of the loose sheets are ruled and have three holes punched at intervals along the left side. All of the loose covers are punched with holes at points corresponding with those on the sheets.

It appears from the record that the sets of loose sheets of journal or ledger paper, including the covers, and the bound blank books, such as the samples in evidence, are sold as a unit to colleges and universities in connection with a basic textbook in introductory accounting.

This laboratory material is for the use of students in completing exercises and problems which are contained in the textbook. Apparently, however, there is nothing which would prevent the use of the sheets in a loose-leaf binder for making any permanent record.

The parties have stipulated that the loose-leaf sheets in issue consist of ruled ledger paper, measuring less than 110 square inches in area and weighing more than 8 pounds to the ream of 187,000 square inches.

With respect to the claimed classification under paragraph 1410, *supra*, as modified, plaintiff contends that the sheets are, in effect, unfinished or unbound blank books, which need only a loose-leaf binder or a red tape joining to become a finished blank book. As such, it is urged that the articles are covered by the principle of the case of *In re Hempstead*, 95 Fed. 967, affirmed 103 Fed. 197, wherein, it is claimed, the court held that unbound books are books for tariff purposes.

We do not construe the *Hempstead* case, *supra*, as having the broad implication ascribed to it by plaintiff. The court there held merely that in the absence of a congressional intent to narrow or confine the statutory meaning of the word, that which is in fact a book may not be deprived of classification as such because it is imported in unbound sheets. The court, in holding that the merchandise before it, which consisted of printed sheets of a work entitled "A Text-Book on Diseases of the Ear and Adjacent Organs," by Dr. Adam Politzer, was a book, was governed largely by the fact that the unbound sheets contained "in orderly and connected fashion the record of the intellectual and literary work of the author * * *."

In any event, we think the present phraseology of paragraph 1410, *supra*, indicates a congressional intent to limit the meaning of the words "blank books" to such only as are bound. The provision in question first assumed its present form as paragraph 1310 of the Tariff Act of 1922. Prior thereto, all major tariff legislation down to and including the act of August 30, 1842, except the act of August 27, 1894, carried an enumeration of one kind or another for blank books, unbound, in addition to that of blank books, bound. When H. R. 7456, which became the Tariff Act of 1922, was before the Senate for consideration, an amendment to the House bill was offered. This placed books and other printed matter susceptible of authorship in one section of the paragraph; blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts in another. The former were provided for, whether bound or unbound; the latter were not.

In the Conference Report of the Houses of Congress, Report No. 1207, we find the following explanation of the Senate amendment:

Amendment No. 1169: The House bill imposed on books of all kinds, bound or unbound, including blank books, slate books and pamphlets, drawings, engravings, photographs, etchings, maps, charts, music in books or sheets, and printed matter, a duty of 20 per cent American value; and on books bound wholly or in part in leather, the chief value of which is in the binding, not specially provided for, a duty of 33⅓ per cent American value. The Senate amendment imposes a duty on unbound books of all kinds, sheets or printed pages of books bound wholly or in part in leather, bound books of all kinds except those bound wholly or in part in leather, including blank books, slate books and pamphlets, engravings, photographs, etchings, maps, charts, music in books or sheets, and printed matter, not specially provided for, if of bona fide foreign authorship, a duty of 15 per cent foreign value; and on all others not specially provided for, 25 per cent foreign value; and on book bindings or covers wholly or in part of leather, not specially provided for, 30 per cent foreign value. The House recedes with an amendment making clerical changes.

We are of opinion that the quoted explanation of Amendment No. 1169, *supra,* the omission of language included in antecedent legislation, and the difference of description within the one paragraph of these two classes of merchandise evidence a clear congressional purpose to restrict the provision for blank books to those which are imported in a bound condition. Accordingly, the claim for classification under paragraph 1410, *supra,* is denied.

We come now to a consideration of the contention that the loose-leaf ledger sheets in question are entitled to classification in accordance with the provisions of paragraph 1407 (a), *supra,* as modified, as ruled ledger paper. Despite the concession that the sheets do in fact conform with the description of said paragraph 1407 (a), their consequent classification thereunder is, nevertheless, not conceded, it being the position of the Government that the punching of the three holes at the side of each sheet dedicated it to use in a loose-leaf binder, and by virtue of such dedication, it became a manufacture of paper.

An article may be said to be a manufacture of the material of which it is composed when it has been so far advanced in condition that it is dedicated to a purpose new and different from its material or when it has assumed a new name, character, or use. Where, however, the essential utilitarian quality of the material remains unaltered by the processing to which it has been subjected, and a new article is not created, the resultant product remains the initial product still. It may more accurately be described as the material, manufactured, but falls short of becoming a manufacture of the material. *United States* v. *Nippon Co. et al.,* 32 C. C. P. A. (Customs) 164, C. A. D. 303; *United States* v. *Wilkinson Process Rubber Sales Corp.,* 22 C. C. P. A. (Customs) 60, T. D. 47051.

In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, ledger paper is described in the following manner:

Ledger paper is usually harder, tougher, and has a more polished surface than bond paper. Oftentimes it is heavier also. There are no bond papers of as great a weight as the heaviest ledger papers. A smooth polished surface on which frequent erasures can be made is necessary, for ledger paper is most frequently used for bookkeeping, public records, and similar purposes. Strength and durability are also naturally requisites of this sort of paper. It is usually made entirely or in greater part of rags.

The act of punching holes in the sheets of ledger paper at bar has altered the form of the paper, making it available for insertion in loose-leaf binders, but its essential quality and use remain unchanged. It is ledger paper still. It has not been so transformed in condition that it is an article of paper rather than paper itself. *C. S. Allen Corp.* v. *United States*, 38 C. C. P. A. (Customs) 48, C. A. D. 438.

As ledger paper weighing over 8 pounds per ream, it is *eo nomine* provided for in paragraph 1407 (a), *supra*, as modified, and since it has been ruled, it is properly dutiable at the rate of 1½ cents per pound and 12½ per centum ad valorem.

It is clear, however, that the cover pages or "Folder Stock" do not respond to the description of ledger paper and no appropriate tariff provision for the classification of this merchandise has been cited to us. Under such circumstances, we would ordinarily hold that the presumption of correctness of the collector's classification of the "Folder Stock" as manufactures of paper, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, has not been overcome.

In this instance, we are unable to do so for the reason that the collector has not separately classified this merchandise, but, apparently regarding the ledger sheets and cover pages as an entirety, he has made a joint classification of these distinct tariff entities. His action was unquestionably predicated upon the appraiser's finding of a single value for both items. Since the appraisements were made on these two classes of merchandise as though they were one, the appraisements are invalid and void. *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185.

It follows, therefore, that the liquidations of the instant entries, based as they were upon void appraisements, are likewise void, *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259, and the protests filed against such void liquidations are premature. Accordingly, they must be dismissed.

Under the provisions of section 501 of the Tariff Act of 1930, as amended by section 16 (b) of the Customs Administrative Act of 1938 (19 U. S. C. section 1501), now 28 U. S. C. section 2636 (d), we are required to remand these matters to a single judge for the determination of the proper dutiable values of the merchandise in question.

Judgment will issue in accordance with the views above expressed