(C. D. 1505)

A. HIRSCHBERG *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided March 5, 1953)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the collector's decision liquidating an entry and assessing duty on a stallion, known as "Loyola," imported from Mexico on December 22, 1947. The various claims, hereinafter discussed, relate to the legality of the appraisement, the liquidation, and the collector's refusal to permit an amendment of the entry.

The following facts in connection with the importation and the subsequent actions of customs officials were brought out by the evidence presented at the trial. Prior to the importation of the stallion, an agreement was entered into on or about December 12, 1947, between Abraham Hirschberg, the importer, and Joe Hernandez, as agent and attorney in fact for Miguel Muzquiz, owner of the horse, pursuant to which the horse was to be shipped to California at the expense of Mr. Hirschberg for the purpose of having it prove itself on California race tracks, and an option was given to him to purchase it for $65,000. Accordingly, the horse was shipped to Los Angeles on December 22, 1947, and an application was made and granted for its immediate delivery to the importer. In order to effect such release prior to the making of a formal entry, a single entry bond in the sum of $50,000 was given by the importer and his surety.

Upon arrival, the animal was examined by Customs Inspector A. Gonzales, who had been designated as an acting examiner, but only for specific rate or unconditionally free merchandise. The horse herein was entered as an animal imported for breeding purposes under paragraph 1606 (a) of the Tariff Act of 1930, pursuant to which its free entry was conditioned upon the production of a certificate of pure breeding. It was never viewed by any customs examiner or appraiser.

In the application for immediate delivery, the *pro forma* invoice, the consular invoice, and the entry, the value of the horse is given as $65,000. The summary of examination and appraisement was initialed by the customs inspector and a check mark placed in the column headed "Appraised," indicating that the merchandise was advisorily appraised as entered. The report was signed by the appraiser on January 6, 1948. Thereafter, on March 31, 1949, an application was

made by the importer for permission to file an amended entry reducing the entered value to $10,000, but this was denied by the collector on April 4, 1949.

Since the certificate of pure breeding required under section 1606 (a) of the Tariff Act of 1930 was never produced, duty was assessed by the collector at 17½ per centum ad valorem under paragraph 714 of said act, as modified by the trade agreement with the United Kingdom, T. D. 49753, as a horse valued at more than $150.

The following claims were made in the protest:

1. That the liquidation is illegal, invalid, and void on the ground that the so-called appraisement was null and void in that the statute and regulations relating to the examination and appraisement of imported merchandise were not complied with.

2. That in accordance with section 501 (c) of the Tariff Act of 1930 [as amended by the Customs Administrative Act of 1938, now 28 U. S. C. § 2636 (d)], the matter should be remanded to a single judge of the United States Customs Court for a determination of the proper dutiable value of the merchandise.

3. That the rejection by the collector of the proposed amendment to the entered value was illegal on the ground that neither the invoice nor the merchandise had come under the observation of the appraiser for the purpose of appraisement.

When the case was called for trial, counsel for the Government moved to consolidate the protest with two other protests involving the same merchandise (No. 161142–K and No. 161144–K). After argument, the motion was denied, but the court noted that counsel for the plaintiff stated that any claims tried in this case would be waived as to the other protests.

Counsel for the Government also made the following motions:

1. To dismiss the protest on the ground that the plaintiff is bound by certain conditions in the single entry bond given by him for the immediate release of the merchandise, by reason of which conditions he is estopped to set up claims that the entered value, the liquidation, and the appraisement are null and void.

2. To dismiss the claim that the case be remanded to a single judge to determine value on the ground that a remand would be tantamount to an appeal for reappraisement, whereas such an appeal would not be valid under section 501 of the Tariff Act of 1930 [as amended, *supra*], because the importer had not complied with all provisions of the act relating to the entry and appraisement of the merchandise.

3. To dismiss said claim on the further ground that under the provisions of section 499 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, no appraisement is to be held invalid because the required number of packages or the required quantity of the merchandise has not been designated for examination, or, if designated, has not been actually examined.

Since decision on these motions was reserved, the issues presented will be considered together with those raised by the protest.

The first point to be determined is whether or not the plaintiff is estopped to claim that the appraisement and the liquidation based thereon are null and void. As stated above, when application was made for the immediate release of the horse, a bond was given by the importer and his surety. It is provided therein, among other things:

WHEREAS, the above-bounden principal desires release of the articles described in the permit or entry prior to the ascertainment by customs officers of the quantity and value of such articles, and of the full amount of the duties and charges due thereon, and prior to the decision by the proper officer as to the right of the articles to admission into the United States;

Now, THEREFORE, THE CONDITION OF THIS OBLIGATION Is SUCH That—

(1) If, in cases where the merchandise has been released prior to entry pursuant to section 448 (b) of the tariff act, the above-bounden principal within 48 hours, exclusive of Sundays and holidays, after the release of the articles described in the application for a special permit, shall make entry for such articles and deposit the duties estimated to be due thereon; or if, in the event of failure to make entry or to deposit such duties, he shall pay the collector of customs as liquidated damages an amount equal to the value of the merchandise plus the duties thereon (it being understood and agreed that the amount to be collected shall be based upon the quantity and value of such merchandise as determined by the collector of customs, and that the decision of the collector as to the status of such merchandise, whether free or dutiable, together with the rate and amount of duties, also shall be binding on all parties to this obligation);

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Then this obligation to be void; otherwise to remain in full force and effect.

Plaintiff filed a consumption entry herein on December 23, 1947, thereby complying with the first condition in paragraph (1), *supra*. No estimated duties were deposited since the horse was entered as being free of duty under paragraph 1606 (a). It is the contention of the Government, however, that the matter in parentheses in paragraph (1) applies to both conditions and that plaintiff has agreed that the amount of duty as well as liquidated damages, if any, shall be based upon a value determined by the collector and that his decision as to the status of the merchandise and the rate and amount of duty shall be binding on all parties. Consequently, it is argued, plaintiff may not now raise the question of the legality of the appraisement and of the liquidation herein.

The terms of the bond, as we understand them, do not support the Government's position. Paragraph (1), *supra*, contains two distinct clauses separated by a semicolon. The parenthetical matter is placed at the end of the second clause and is not separated from it by any punctuation other than the parentheses. It is clear, therefore, that the parenthetical matter refers only to the second clause. It is a statement of the method of determining liquidated damages based upon the value of the merchandise and the rate of duty in cases where no entry has been filed. Since, in such cases, there is no entered value

or claimed amount of duties, the determination of the same is left exclusively with the collector. Where the first condition is complied with and an entry is filed, there is no reason for the value and duty being found in other than the usual manner. Note in this connection that in another paragraph of the bond it is provided that if the principal shall fail to mark, label, clean, fumigate, destroy, or export such merchandise as may be required, he shall pay the collector "an amount equal to the value of the merchandise * * * *as set forth in the entry*, plus the estimated duties thereon, *as determined at the time of entry.*" [Italics supplied.]

We conclude that under paragraph (1), *supra*, plaintiff agreed to file formal entry within 48 hours after release of the merchandise, or to pay liquidated damages to be determined in a stated manner; he did not waive any rights in a case where he filed a formal entry within the stated period. Since plaintiff did file the entry, as required, he is not estopped to claim any illegality on the part of customs officials in regard to the appraisement or liquidation of the same. The Government's motion to dismiss the protest on the ground of estoppel is denied.

The next issue to be considered is plaintiff's claim that the liquidation is void because based upon an illegal appraisement. The uncontradicted evidence herein establishes that the horse "Loyola" was examined by a customs inspector upon arrival in this country but was never viewed by any customs examiner or appraiser. Appraisement was based upon the report of the inspector.

The facts in the instant case are similar to those in *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259. There, two circus horses were originally entered for exhibition purposes, but were retained beyond the 6-month period and a consumption entry filed. The horses had been viewed and inspected by an examiner's assistant who reported his findings to the examiner who, in turn, reported to the assistant appraiser. Appraisement was based upon these reports, no examiner or assistant appraiser having viewed the horses. It was held that section 500 (e) of the Tariff Act of 1930 is mandatory and that, except as to certain cases provided for in the customs regulations, the examiner is required to make a personal examination and inspection of imported merchandise. The court held further that the appraisement, being based upon the report of an examiner who failed to examine, was illegal and void and that the liquidation of the entry based upon such an appraisement was likewise illegal and void.

In the instant case, the appraisement was based upon the report of an inspector who had no authority to examine the merchandise for purposes of appraisement. Under the principle in the above-cited

case, the appraisement and the subsequent liquidation appear to be illegal and void.

However, the Government claims that under section 499 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, appraisements may no longer be held invalid on the ground that merchandise "if designated, was not actually examined." Said amendment provides:

No appraisement made after the effective date of the Customs Administrative Act of 1938 shall be held invalid on the ground that the required number of packages or the required quantity of the merchandise was not designated for examination or, if designated, was not actually examined, unless the party claiming such invalidity shall establish that merchandise in the packages or quantities not designated for examination, or not actually examined, was different from that actually examined and that the difference was such as to establish the incorrectness of the appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

Section 499 also provides that not less than 1 package of every invoice and not less than 1 out of every 10 packages shall be designated for examination, and, prior to the amendment, the courts held that a failure to designate or examine the required number invalidated the appraisement. *United States* v. *Jacob P. Steffan & Sons*, 18 C. C. P. A. (Customs) 455, T. D. 44702; *United States* v. *V. W. Davis, Sinai Kosher Sausage Factory*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. (Customs) 372, T. D. 48233.

The purpose of the amendment was to prevent the invalidation of appraisements on such grounds—

* * * by declaring that no appraisement shall be held invalid because of a failure on the part of the Customs Service to comply with the provisions relative to designation of packages for examination unless the claimant shall sustain the burden of establishing the fact that the merchandise not designated or not examined is different from that examined and that such difference renders the appraiser's return incorrect as to value and then only to the extent the value returned by the appraiser is shown to be incorrect. [Hearings Before the Committee on Ways and Means, House of Representatives, 75th Congress, 1st Session, on H. R. 6738, p. 135.]

See also Hearings Before a Subcommittee of the Committee on Finance, United States Senate, 75th Congress, 3d Session, on H. R. 8099, p. 14.

It is apparent that it was the intention of the drafters of the amendment to provide that appraisements should not be invalidated because an insufficient number of packages out of a larger quantity was examined. The amendment does not refer to a case, such as the present, where no examination of any of the merchandise was made by an authorized official.

We hold, therefore, that the appraisement herein is illegal and void and that the liquidation based thereon is likewise illegal and void.

Since the appraisement is invalid, section 501 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, now 28 U. S. C. § 2636 (d), is applicable. It provides:

If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

This section requires the court to remand the case to a single judge to determine value, whenever an appraisement is found to have been invalid. When it was originally being considered by Congress, statements prepared by the Treasury Department were submitted to the effect that "when the appraisement of an importation is held to be invalid, the United States Customs Court *must* find the proper dutiable value of the goods." [Italics supplied.] Hearings Before the Committee on Ways and Means, *supra*, p. 35; Hearings Before a Subcommittee of the Committee on Finance, *supra*, p. 14.

Nevertheless, the Government has moved to dismiss plaintiff's claim that the case be remanded in accordance with the provisions of section 501 (c), *supra*, first, on the ground that such a remand would be tantamount to an appeal for reappraisement which importer might not make under section 501 of the Tariff Act of 1930, as amended, and, second, on the ground that the appraisement is not invalid for failure to examine the merchandise because of the provisions of section 499, as amended, *supra*. The second ground is not tenable for reasons already stated.

Section 501, *supra*, provides that no appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all of the provisions relating to the entry and appraisement of merchandise. The Government claims that these provisions have not been complied with in that plaintiff, knowing that the horse was being imported by a citizen of Mexico for racing purposes, represented on the entry and the application for immediate release that the horse was imported by himself, an American citizen, for breeding purposes, free of duty under paragraph 1606 (a).

It may be that plaintiff would not be permitted to file an appeal for reappraisement because of such representations. However, section 501 (c), *supra*, was not enacted solely for the benefit of importers, but so that customs officials might have a valid appraisement before them. See Hearings Before the Committee on Ways and Means, *supra*, p. 135. In fact, under the terms of the statute, where the court finds that the appraisement is invalid, it is required to remand the case to a single judge to find value, whether or not such procedure is requested by the parties. *Pitman Publishing Corporation* v. *United States*, 28

'Cust. Ct. 164, C. D. 1404; *Hughes Fawcett, Inc.* v. *United States,* 29 Cust. Ct. 1, C. D. 1434.

In the instant case, since the appraisement and the liquidation based thereon are null and void, we are required by the statute to remand the matter to a single judge to determine the proper dutiable value of the merchandise in the manner provided by law. The 'Government's motion to dismiss the claim that the case be so remanded is denied.

Since there has been no legal liquidation herein, plaintiff's protest, insofar as it refers to the collector's refusal to permit the amendment of the entry, is premature and must be dismissed. *Waddell* v. *United States,* 13 Ct. Cust. Appls. 424, T. D. 41342; *Hopkins & Co.* v. *United States,* 14 Ct. Cust. Appls. 29, T. D. 41545.

To recapitulate:

1. The motions made by the Government (a) to dismiss the protest on the ground of estoppel, and (b) to dismiss the claim in the protest that the case be remanded to a single judge to determine value, are denied.

2. The protest is sustained as to the claim that the appraisement and the liquidation based thereon are illegal and void and as to the claim that the case be remanded to a single judge to determine value.

3. The protest is dismissed insofar as it relates to the collector's refusal to permit the amendment of the entry.

4. The case will be remanded to a single judge to determine the proper dutiable value of the merchandise in the manner provided by law.

Judgment will be rendered accordingly.