UNITED STATES v. A. HIRSCHBERG (No. 4777)[1]

United States Court of Customs and Patent Appeals, June 24, 1954

*Warren E. Burger*, Assistant Attorney General (*Richard F. Weeks* and *Dorothy C. Bennett*, special attorneys, of counsel), for the United States.

*Lawrence, Tuttle & Harper* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for appellee.

[Oral argument December 11, 1953, by Mrs. Bennett and Mr. Tuttle]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

The Government here seeks reversal of the judgment of the United States Customs Court, Third Division, rendered pursuant to its decision, 30 Cust. Ct. 104, C. D. 1505, sustaining the protest of the importer that the collector's liquidation of the involved entry was illegal and void because the importation, which consisted of a thoroughbred stallion known as "Loyola," was examined by a customs inspector not authorized to examine it for appraisement purposes.

[1] C. A. D. 571

Two motions made on behalf of the Government (a) to dismiss the protest on ground of estoppel, and (b) to dismiss the claim in the protest that the case be remanded to a single judge to determine value were denied. From that judgment, the Government also brought this appeal.

The stallion was imported from Mexico and arrived at the port of Los Angeles, California, by airplane on December 22, 1947. It was formally entered there December 23, 1947, under paragraph 1606 (a) of the Tariff Act of 1930, as an animal imported for breeding purposes. Pursuant to the terms of the statute, free entry of the stallion was conditioned upon the production by the importer of a certificate of pure breeding.

It appears from the record that prior to the importation and on or about December 12, 1947, appellee, the importer, entered into an agreement with the Mexican owner whereby the stallion was to be shipped by air to California to be there tested on the racetracks; appellee to pay the costs of the transportation and to have an option to purchase the horse for the sum of $65,000.

Furthermore, on December 18, 1947, prior to the shipment of the animal from Mexico and its arrival at Los Angeles, appellee made application for the immediate release of the stallion upon its arrival. Section 448 (b) of the Act authorized such delivery prior to formal entry "of perishable articles and other articles, the immediate delivery of which is necessary," such as a live horse. Appellee also executed a bond in the sum of $50,000 that he would make entry within 48 hours after such release or, if he did not make entry, that he would pay as liquidated damages an amount equal to the value of the horse, plus duties.

The horse was examined by a customs inspector upon its arrival. The designated inspector was authorized, however, to examine not the horse but only specific rate or unconditionally free merchandise. In the application for immediate release and delivery, the value of the horse was stated on the *pro forma* invoice, the consular invoice, and the entry as $65,000. The stallion was appraised as entered, the report thereof being signed by the appraiser January 6, 1948.

The United States Department of Agriculture subsequently refused to issue the certificate of pure breeding required by said section 1606 (a). The claim for free entry was accordingly rejected, and duty was assessed at 17½ per cent of the entered value of the animal, pursuant to paragraph 714 of the Tariff Act of 1930.

Thereafter, on March 31, 1949, appellee, the importer, requested permission to file an amended entry reducing the entered value of the horse from $65,000 to $10,000; the horse having been injured and sold at auction in the meantime for $10,000. The request was denied by

the collector, the animal having been advisorily appraised, as entered, at $65,000.

The importer thereupon filed a protest in the United States Customs Court claiming the liquidation hereinbefore described was illegal and void and requesting that the case be remanded to a single judge to determine value. The importer also claimed in his protest that the collector's rejection of the proposed amendment to the entered value of the stallion was illegal because neither the stallion nor the invoice had been legally observed by an appraiser qualified for appraisement purposes.

The court below sustained the importer's protest as to the claim that the appraisement and liquidation based thereon was illegal and void and remanded the case to a single judge to determine value. With respect to the collector's refusal to permit amendment of the entry, the court held the claim in appellee's protest against the legality of such action to be premature and this claim was dismissed.

Four points are here urged as separate and distinct grounds for the reversal of the judgment appealed from, namely:

Point I. Appellee is estopped from claiming that the appraisement and the liquidation based thereon are illegal and void.

Point II. The lower court therefore erred in holding that said appraisement and the liquidation based thereon were illegal and void.

Point III. The provision in Section 499 of the Tariff Act, as amended by the Customs Administrative Act of 1938, applies to the case at bar, and declares that the appraisement shall not be adjudged void unless the importer meets the burden of proof therein imposed:

Point IV. The proposed amended entry was untimely under Section 487, Tariff Act of 1930, and liquidation on less than the original entered value is prohibited by Section 503 (a) of said Tariff Act. Therefore, the lower court erred in holding that the amended entry was a question for the future.

Appellee correctly points out in his brief that Government counsel erroneously raises a point of law here regarding subject matter defined by Points I and II hereinbefore described and concerning which there was no testimony or question of law presented or considered by the trial court. *United States* v. *R. E. Macksoud,* 27 C. C. P. A. (Customs) 218, C. A. D. 87; *United States* v. *Freedman & Slater, Inc.,* 25 C. C. P. A. (Customs) 112, T. D. 49241; *M. H. Rogers, Inc.* v. *United States,* 21 C. C. P. A. (Customs) 560, 565, T. D. 46989. Moreover, the Government's position on those two points is nowise supported by the record or the authorities upon which it has relied. The same is generally true with respect to Point III.

We agree, however, with that portion of the Government's Point IV which advances, as a legal and valid proposition of customs law,

that the proposed amendment offered by appellee and reducing the declared value of the stallion from $65,000 to $10,000 was untimely and illegal under the provisions of section 487, *supra*, the text of which reads as follows:

Section 487. *Value in Entry-Amendment.* The consignee or his agent may, under such regulations as the Secretary of the Treasury may prescribe, *at the time entry is made, or at any time before the invoice* or the merchandise *has come under the observation of the appraiser for the purpose of appraisement,* make in the entry such additions to or deductions from the cost or value given in the invoice as, in his opinion, may raise or lower the same to the value of such merchandise. (Italics supplied.)

The consignee of imported merchandise or his agent under the explicit terms of section 487 is thus authorized to amend and make in his entry such additions to or deductions from the value given in the invoice, provided such amendment is effected (1) at the time entry of the imported merchandise is made, or (2) at any time before the invoice therefor has come under the observation of the appraiser for the purpose of appraisement of the said merchandise.

Both parties rely here upon the doctrine of *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259, as a controlling factor with respect to certain conflicting contentions. Both parties apparently concede that the appraisement of the two circus horses involved in that case was null and void by reason of the examiner's failure to personally inspect the imported animals as required by section 500 (e) of the Act of 1930. The stipulation upon which that case was decided did not, however, raise appellee's right to amend his entry either at the time the entry was made, or any time before the invoice covering the importation of the horses had come under the observation of the appraiser for the purpose of appraisement. The trial court had held that "the invoice was improperly before the appraiser because * * * the examiner had failed to comply with the law in that he had made no inspection of the merchandise, and had made his report to the appraiser without such inspection."

Our court in rendering the decision on the point just described, noted that the holding by the court below, was gratuitously contributed and was "surplusage because not responsive to the issue presented by appellee's protest, and, obviously, was not intended to be binding upon customs officials." Recourse to the briefs on appeal which are classified with the official records of this court disclose no reference therein to the fact that section 487, *supra*, was involved on that appeal to this court.

It is observed there is no further analogy of importance between the facts of the last cited case, which developed from a clerical error, and the case at bar. Here there is no dispute that the originally appraised value was the value entered by appellee; that the value

accepted by the appraiser was the value that had been fixed by the agreement of the owner and appellee; that such value was the value of the horse in its condition as imported; that the injury to the animal, which is alleged to have lowered its value from $65,000 to $10,000, occurred long after its importation; that the instant summary sheet covering the importation was signed by the appraiser on January 6, 1948, and that almost a year and three months elapsed before appellee attempted to file an amended entry which occurred on March 31, 1949. Appellee's proposed amendments were untimely filed. *D. C. Andrews & Co.*, 29 C. C. P. A. (Customs) 131, C. A. D. 182.

Numerous cases and arguments have been cited in the briefs submitted by counsel for the respective parties but after a careful analysis thereof in the light of the facts presented in the record, we conclude that the judgment of the United States Customs Court in this case should be and hereby is *reversed*.

GARRETT, C. J., because of illness did not participate in the decision.