(C. D. 1661)

W. A. TAYLOR & Co. v. UNITED STATES

United States Customs Court, Third Division

(Decided December 2, 1954)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *Richard H. Welsh*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's reliquidation of certain entries following a judgment of this court in *W. A.*

*Taylor & Co.* v. *United States*, 28 Cust. Ct. 461, Abstract 56588. It is claimed that the reliquidation, which resulted in an increased total amount of duties, was illegal on the ground that section 514 of the Tariff Act of 1930 does not confer the right to claim a higher rate or amount of duty than that assessed on liquidation; that, therefore, the original protests herein were illegal and void; and that the court had no jurisdiction in the matter.

This case was originally heard and submitted before the first division of this court, but the submission was subsequently set aside and the case resubmitted to this division upon the record as made.

The facts, as they appear from the official papers received in evidence at the trial, are as follows: The merchandise involved herein is grenadine imported in bottles. It was originally assessed with duty at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as unenumerated manufactured articles. Protests were filed against the said assessment of duty on "grenadine, sirop, or syrup grenadine, or creme de menthe sirop." The following claims were made:

Said merchandise is not dutiable as assessed. It is properly dutiable at only 15% under Par. 38, or at 15¢ per gallon under Par. 808. If dutiable under Par. 808, then the bottles or jugs, the containers of the merchandise the subject hereof, are dutiable under the provisions of Par. 810.

Alternatively, it is claimed dutiable under Par. 501 or Par. 502, either directly or by similitude, according to the sugar test and content.

Each of the above claims is made, and only made, with the proviso and conditionally, that the rate claimed is lower than the rate assessed.

Subsequently, the protests were submitted on a stipulation stating that the merchandise "assessed with duty at the rate of 20% ad valorem under the provisions of Paragraph 1558, Tariff Act of 1930, consists of grenadine, the same in all material respects as the grenadine the subject of *La Manna, Azema & Farnan, Inc.* v. *The United States*, 39 C. C. P. A. (Customs) 44, C. A. D. 461, wherein the merchandise was held properly dutiable under Paragraph 501 at the highest rate therein provided, by virtue of Paragraph 1559, Tariff Act of 1930."

On this stipulation and on the authority of the decision cited, this court sustained the protests and directed the collector to "reliquidate the entries and assess duty at the highest rate provided in paragraph 501 of the Tariff Act of 1930, by virtue of paragraph 1559, in accordance with law." *W. A. Taylor & Co.* v. *United States, supra.*

In reliquidating the entries, the collector assessed duty on the grenadine at the rate of 2.65 cents per pound (the highest rate under paragraph 501), and, in addition, assessed duty on the bottles in

accordance with the provisions of paragraph 217. The amounts found due under the original liquidation and the reliquidation are as follows:

| Entry | Liquidation | Reliquidation | |
|---|---|---|---|
| 848222 | On grenadine in bottles (Par. 1558) $113.20 | On grenadine (Par. 501) _ _ _ _ _ | $89. 41 |
| | | On bottles (Par. 217) _ _ _ _ _ _ _ | 28. 50 |
| | | | $117. 91 |
| 712548 | On grenadine in bottles (Par. 1558) $143.40 | On grenadine (Par. 501) _ _ _ _ _ | $106. 74 |
| | | On bottles (Par. 217) _ _ _ _ _ _ _ | 39. 50 |
| | | | $146. 24 |
| 901029 | On grenadine in bottles (Par. 1558) $137.20 | On grenadine (Par. 501) _ _ _ _ _ | $78. 55 |
| | | On bottles (Par. 217) _ _ _ _ _ _ _ | 62. 00 |
| | | | $140. 55 |

It will be seen, therefore, that in each case the total amount of duties found due on reliquidation was a little greater than that assessed on liquidation.

The provisions of the tariff act pertinent to the issues involved herein are as follows:

PAR. 1558. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 501. Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seveny-five sugar degrees, 1.7125 cents per pound, and for each additional sugar degree shown by the polariscopic test, three hundred and seventy-five ten-thousandths of 1 cent per pound additional, and fractions of a degree in proportion.

PAR. 1559. * * * and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value * * *.

PAR. 217. Bottles, vials, jars, ampoules, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upón the value thereof, which shall be dutiable at the rate applicable to their contents), shall be subject to duty as follows: If holding more than one pint, 1 cent per pound; if holding not more than one pint and not less than one-fourth of one pint, 1½ cents per pound; if holding less than one-fourth of one pint, 50 cents per gross: * * *.

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any pro-

vision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

SEC. 515. SAME.

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter remit or refund any duties, charge, or exaction found to have been assessed or collected in excess, or pay any drawback found due, of which notice shall be given as in the case of the original liquidation, and against which protest may be filed within the same time and in the same manner and under the same conditions as against the original liquidation or decision. If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. Such determination shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law.

It is plaintiff's claim that the judgment of this court sustaining the original protests is void on the ground that the court is without jurisdiction over protests claiming a higher rate or amount of duty, or resulting in a higher amount of duty.

In support of its contention, plaintiff relies upon *George S. Fletcher v. United States*, 25 C. C. P. A. (Customs) 195, T. D. 49294. That case involved pineapples which were assessed with duty at 20 cents per crate of 2.45 cubic feet under paragraph 747 of the Tariff Act of 1930, as modified by a trade agreement with Cuba, T. D. 47232. The said trade agreement had been made pursuant to the provisions of the Reciprocal Trade Agreements Act of June 12, 1934 (section 350, Tariff Act of 1930, as amended). Plaintiff claimed that the pineapples were dutiable at the higher rate provided in paragraph 747, as originally enacted, contending that the Reciprocal Trade Agreements Act was unconstitutional and the trade agreement invalid. The court below granted the Government's motion to dismiss the protest on the

ground that the court had no jurisdiction to entertain the same as it claimed a higher rate of duty than the collector had applied. In affirming the decision, the appellate court pointed out that the tariff acts of 1922 and 1930 had given American manufacturers, producers, and wholesalers the right to protest a rate that was regarded as too low but that that right had been expressly withdrawn by Congress as to rates fixed by virtue of the Reciprocal Trade Agreements Act. The court continued (p. 200):

* * * Obviously by its express amendment of the 1930 act it did not intend that the producer could do indirectly what it denied him the right to do directly. If a producer, such as the appellant, could make an importation and accomplish the same purpose by protesting the rate fixed under the amended Tariff Act of 1930, the amendment to the act would amount to a nullity.

It is reasonable to conclude from all the facts heretofore cited that Congress at no time since the enactment of the tariff act of 1913 intended that an *importer* might protest a rate of duty as being too low, and certainly its amendment of the Tariff Act of 1930 in the manner above stated would not suggest that it contemplated that a right existed in an American producer to import goods and then challenge the correctness of a lower rate of duty than that which is claimed to be proper. [Italics quoted.]

The facts in the instant case are not analogous. Here, the importer did not claim in the original protests that the rate of duty or the amount thereof was too low. In fact, the protests were conditioned upon the rate claimed being lower than that assessed. Consequently, the jurisdiction of this court was properly invoked. It is plaintiff's contention, however, that the court exceeded its jurisdiction when it rendered a judgment which resulted in an increase of the total amount of duties assessed.

In considering this question, we note, first, that the original protests referred to the merchandise as "grenadine, sirop, or syrup grenadine, or creme de menthe sirop," and the stipulation upon which the case was submitted stated that the merchandise consisted of grenadine. In the decision, the court held that "the merchandise marked 'A,' * * * on the invoices" was dutiable under paragraph 501 of the Tariff Act of 1930 at the highest rate provided therein. The judgment sustained the protests as to the items marked "A" and directed the collector to reliquidate and assess duty at the highest rate provided in said paragraph 501. Accordingly, the grenadine was assessed with duty by the collector under paragraph 501. Neither the rate nor the amount of duties on the grenadine *per se* was higher than the rate and amount originally assessed.

However, because the rate was changed from an ad valorem to a specific one, the collector was required under paragraph 217 of the said tariff act to assess duty on the bottles at the specific rates therein provided. It is not claimed that the collector failed to follow the mandate of the court in doing so. When he reliquidated, assessing

duty on the grenadine at a specific rate, he was required by the congressional mandate in paragraph 217 to assess duty on the bottles separately and at specific rates. His action was not contrary to or in violation of the judgment. *Mitsubishi Shoji Kaisha, Ltd.* v. *United States*, 8 Cust. Ct. 199, C. D. 603.

Although nothing was said in the judgment in regard to paragraph 217, its effect was to reclassify the merchandise from one tariff entity, grenadine (in containers), into two separate classes of merchandise, grenadine, and bottles. The court is "clothed by law with authority to determine the classification of merchandise" (*United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, 145, T. D. 34192) and it is frequently called upon to decide whether goods which the collector has classified as a single tariff entity constitute, in fact, two classes of merchandise, or *vice versa*. For instance, containers may be dutiable at the same rate as their contents, being valued with the contents as one entity, or they may be considered a separate class of merchandise. *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T. D. 31577; *Balfour, Guthrie & Co., Ltd.* v. *United States*, 27 C. C. P. A. (Customs) 17, C. A. D. 55; *Heirloom Needlework Guild, Inc.* v. *United States*, 14 Cust. Ct. 82, C. D. 916; *John P. Herber & Co., Inc.* v. *United States*, 30 Cust. Ct. 193, C. D. 1519. Articles which have been classified by the collector as entireties may be held to constitute two or more separate classes of merchandise, or items classified separately may be held to be entireties. *United States* v. *Radio Corp. of America, RCA Victor Division*, 41 C. C. P. A. (Customs) 137, C. A. D. 541; *Pitman Publishing Corporation* v. *United States*, 28 Cust. Ct. 164, C. D. 1404; *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C. D. 1619.

It is clear, therefore, that the court in the instant case had the power to hold that the grenadine and the containers, assessed with duty by the collector as a single entity, were properly classifiable as two classes of merchandise, grenadine, and bottles. This was not done explicitly, but even if it had been, such action would not have exceeded the jurisdiction of the court.

The claim that the court acted beyond the scope of its power must rest upon the narrow ground that the result of the judgment was that the total amount of duties assessed on the two classes of merchandise exceeded the total amount of duties assessed by the collector when he treated the two as a single tariff entity. There was nothing in the record before the court by which it could have determined that its judgment would have that result. That could have been established only by a mathematical computation, but the information necessary to make it, namely, the weight of the grenadine and the weight and size of the bottles, was not placed in evidence by either party.

It is our view that, under all the circumstances of this case, it cannot be held that the court, which had jurisdiction of the parties and the subject matter in the first instance, exceeded its power in rendering the judgment complained of.

Another point to be considered is whether, even assuming that the court did exceed its jurisdiction, the plaintiff may attack the judgment in this proceeding. The general rule is that judgments of a court having jurisdiction of the parties and the subject matter are not open to impeachment by parties or privies in any collateral action or proceeding. Freeman on Judgments, section 305; 31 Am. Jur., Judgments, section 576; 49 C. J. S. 792; *McGoon* v. *Scales*, 9 Wall. 23; *In re Cooper*, 143 U. S. 472, 506; *United States* v. *Kurtz, Stuböeck & Co., supra; In re Sommerich & Loewith*, 27 Treas. Dec. 63, T. D. 34666. A judgment which is void for want of jurisdiction may be attacked collaterally, but, according to the majority rule, only if the want of jurisdiction appears affirmatively on the face of the record. Freeman on Judgments, sections 305, 318, 322, 375; 31 Am. Jur., Judgments, section 602; 49 C. J. S. 794–797, 822–824; *Bryan* v. *Kennett*, 113 U. S. 179; *Evers* v. *Watson*, 156 U. S. 527; *Bostwick* v. *Baldwin Drainage District*, 133 F. 2d 1, cert. den. 319 U. S. 742; *Iselin* v. *La Coste*, 147 F. 2d 791. The rule has been set forth in Freeman on Judgments, section 322, as follows:

* * * In every case the field of collateral inquiry is narrowed down to the single issue concerning the void character of the judgment and the assailant is called upon to satisfy the court that such is the fact. To compass his purpose of overthrowing the judgment, it is not enough that he show a mistaken or erroneous decision or a record disclosing nonjurisdictional irregularities in the proceedings leading up to the judgment. He must go beyond this and show to the court, generally from the face of the record itself, that the judgment complained of is utterly void.

Every court in rendering a judgment, tacitly, if not expressly, determines its own jurisdiction, and such determination, while open to direct review, is not subject to collateral attack. 49 C. J. S. 849; *Dowell* v. *Applegate*, 152 U. S. 327; *Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371; *Stoll* v. *Gottlieb*, 305 U. S. 165, rehearing denied 305 U. S. 675; *Jackson* v. *Irving Trust Co.*, 311 U. S. 494. In fact, "recent decisions appear to attach rather conclusive significance to jurisdictional findings and veer somewhat sharply from the earlier view that jurisdiction of subject matter could always be looked into, even collaterally." Cyclopedia of Federal Procedure, volume 1, page 103.

A party at whose instance a judgment has been rendered may not in a collateral proceeding contend that the judgment is invalid. Freeman on Judgments, section 320; 31 Am. Jur., Judgments, section 432; Cyclopedia of Federal Procedure, volume 1, page 738; *Iselin* v.

*La Coste, supra; Prichard* v. *Nelson,* 137 F. 2d 312. In Freeman on Judgments, section 320, it is stated:

> Even where the circumstances are such as might otherwise afford sufficient grounds for successful attack collaterally upon a judgment or decree, the conduct of a party may be such as to estop him from availing himself of those grounds. . The general rule has been laid down and is supported by numerous decisions, that a party at whose instance a judgment was rendered is not entitled in a collateral proceeding to contend that the judgment is invalid. The reason or principle on which these decisions rest is not technically the doctrine of estoppel in the ordinary signification and acceptance of the term, but the principle that a person, having invoked the jurisdiction of a court and submitted himself thereto, cannot be heard thereafter, in a collateral proceeding, to question the jurisdiction so invoked. * * *

In the instant case, the court had jurisdiction over the parties and the subject matter, and there is nothing on the face of the judgment or of the record to show that it exceeded its jurisdiction by the judgment it rendered. The plaintiff herein was the party that invoked the jurisdiction of the court. It did not present to the court the essential facts upon the basis of which the court might have determined that it did not have the power to render the judgment it did. "The instances must, indeed, be rare where a litigant can succeed in charging to the court errors of his own contriving." *Iselin* v. *La Coste, supra,* page 794.

Under the circumstances herein, the plaintiff cannot attack the judgment in the present proceeding.

For the reasons stated, the protest is overruled, and judgment will be rendered in favor of the defendant.