**No. 42038.**—Protest 878024–G of Pacific Molasses Co. (Los Angeles).

DALLINGER, Judge: This is a suit against the United States, arising at the port of Los Angeles, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of a certain so-called rotary molasses pump and an accompanying electric motor. Duty was levied thereon at the rate of 35 percent ad valorem under paragraph 353 of the

Tariff Act of 1930 as an article having as an essential feature an electrical element or device. It is claimed that said merchandise is properly dutiable at the rate of 27½ percent ad valorem under paragraph 372 of said act as a machine not specially provided for.

The plaintiff offered in evidence the testimony of a single witness, Harry Robinson, superintendent of the plant of the plaintiff corporation located at San Pedro, Calif. No evidence was introduced by the Government.

The said witness testified that the pump in question was used for pumping molasses from storage tanks into tank cars and trucks; that it was equipped to be operated by the electric motor which accompanied it; that a certain sketch, admitted in evidence as Illustrative Exhibit A, shows the side elevation of the imported mechanism as set up, including the motor and gears; and that another sketch admitted in evidence as Illustrative Exhibit B, shows the ground plan of the pump, with special reference to the motor and gear shaft.

At this juncture the witness marked the pump itself with the letter "A", the motor with the letter "B", the first clutch between the electric motor and the gear with the letter "C", the gear next to the first clutch with the letter "D", and the second clutch with the letter "E".

The witness then testified that he had had experience with the operation of various American-made pumps which were similarly motivated by electric motor; that he had operated such pumps at Crockett, Calif., with power other than electricity; that the pump in this particular instance could be operated from a shaft and belt by either steam or electricity; that there is nothing about this particular pump which limits its operation to an electric motor; that the pump itself is separated from the power which drives it by the clutches; that the purpose of the clutch is to transmit the power from the motor to the gear; and that the purpose of the gear is to reduce the speed of the motor and hence to slow down the speed of the pump.

The witness then testified as follows:

Q. As set up at the present time and operating with an electric motor as you are operating it at the present time, is the electric motor permanently attached to the pump in question?—A. In this particular case it is attached with bolts to the foundation. Through the clutch it is attached; it would be rather difficult to take it out, but it could be done without very much expense.

On cross-examination the witness testified as follows:

X Q. Would you please describe, if you can, the kind and extent of any electric wire that may be found through Illustrative Exhibit A?—A. There is a starter; a starting and control switch * * *.

X Q. Are there any electrical elements of any kind in this entire machine, as represented by Illustrative Exhibit A, outside of the motor?—A. None whatever.

X Q. You can take the motor away?—A. You can take the motor away without in any way interfering with the rest of the operations.

X Q. Directing your attention to the motor, is the motor so constructed by having any plates or holes on the ends of it that it fits into the clutch, which is marked "C" on here?—A. Yes, sir.

X Q. The motor was imported with this pump?—A. Yes, sir.

X Q. And in its condition as imported it was specifically fitted and prepared to be used in that clutch, was it?—A. In this clutch; yes.

X Q. Now, you said you could use an overhead pulley to drive that; is that correct?—A. Yes, sir.

X Q. And if you used an overhead pulley you would have to dismantle that clutch, wouldn't you?—A. Just half of it.

X Q. Part of that clutch is already fitted to that electric motor, isn't it?—A. Right.

X Q. So that to divide the clutch in half to convert it to some other source of power, you are taking away from the clutch that part of it which is already fitted against this electric motor; isn't that so?—A. Fastened to there with a stud bolt; take the motor away and take that stud bolt out and you could keep the whole clutch together if you wanted to.

\*        \*        \*        \*        \*        \*        \*

X Q. Now, as originally imported, as I understand you, the motor came in with the pump?—A. Not all together: they were created separately, but all came in the same shipment.

X Q. And the motor is fitted so that it will work with this clutch, item "C"?—A. Yes, sir.

Upon this record counsel for the plaintiff in their brief filed herein contend that the electric motor in the instant case is not an essential feature of the machine in question, citing the cases of *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. 96, T. D. 47080; *John A. Steer & Co.* v. *United States*, 24 id. 293, T. D. 48737; *American Machine & Foundry Co. et al.* v. *United States*, T. D. 49479, 73 Treas. Dec. 519; and *Henry A. Wess, Inc.*, v. *United States*, Abstract 26564, 65 id. 1206.

We have carefully examined the cases cited and in our opinion none of them is applicable to the facts in the instant case.

On the other hand, counsel for the Government in his brief filed herein contends that the machine in question is an article having as an essential feature an electrical element or device, and cites the cases of *John A. Steer & Co.* v. *United States, supra; Ralph C. Coxhead Corp.* v. *United States, supra*, and *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. 51, T. D. 47050.

A consideration of the record and an examination of the exhibits convince us that the machine at bar was especially constructed to be operated by an electric motor, which motor in turn was specially constructed to fit into a particular clutch, which latter was an essential part of the machine as set up. While the machine could be partially dismantled and reconstructed in order to enable it to be operated by some power other than electricity, we are satisfied, in view of the law as laid down by the cited cases, that the machine in question in its knocked-down condition is an article having as an essential feature an electrical element or device. We therefore affirm the decision of the collector and overrule all claims of the plaintiff. Judgment will be rendered accordingly.