(C. D. 1833)

CLARENCE S. HOLMES *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 20, 1956)

*Lawrence & Tuttle* (*George R. Tuttle* and· *Dan Erik Hedin* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: In this action, we are asked to determine the proper dutiable status of certain parts of pneumatic chip conveyors, consisting of five blower motor assemblies and one feeder with motor. This merchandise was classified by the collector of customs at the port of Seattle, Wash., as "Parts of machines (blowers) having an electric motor as an essential feature" and assessed with duty at the rate of 17½ per centum ad valorem within the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

It is claimed in the protest that said merchandise, described therein as "Blower machines and parts thereof, including their blowers, motors, or engines," is dutiable at the rate of 13¾ per centum ad valorem, either as articles having as an essential feature an electrical element or device, or as machines, not specially provided for, within the provisions of paragraph 353 of the Tariff Act of 1930, or of paragraph 372 of said act, respectively, both as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, or at the rate of 10 per centum ad valorem, as machines for making paper pulp or paper, pursuant to the provi-

sions of said paragraph 372, as modified by said Torquay protocol. While none of the alternative claims has been abandoned, plaintiff relies primarily upon the contention that all of the subject articles are provided for in said paragraph 372, as modified, *supra*, as machines, not specially provided for.

Certain observations concerning the protest are here deemed pertinent. It would appear that, in describing the merchandise which formed the subject of the protest, plaintiff made no specific reference to the item of the feeder, although evidently regarding the collector's classification of that item as erroneous. Ordinarily, we would be inclined to the view that an article not specified in the protest is not before the court for consideration. However, since both the blower assemblies and the feeder, with its accompanying motor, were described by the collector under one designation as "Parts of machines (blowers) having an electric motor as an essential feature" and were assessed with duty at one rate, we do not regard plaintiff's omission as fatal to its claim for reclassification of the feeder. A more apt description might perhaps have been chosen than the one employed by the plaintiff, but it does not appear that the collector was in doubt as to the character of the items protested, and no question has been raised by the defendant in connection therewith. We shall, therefore, treat this action as covering all items of merchandise assessed with duty at the rate of 17½ per centum ad valorem.

The provisions herein invoked read as follows:

Paragraph 353, as modified by the General Agreement on Tariffs and Trade, *supra*:

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    Switches and switchgear which are not wiring apparatus, instruments, or devices; fans; blowers; and washing machines_____ 17½% ad val.

Paragraph 353, as modified by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

   \*       \*       \*       \*       \*       \*

    Electric motors, furnaces, heaters, and ovens_____ 12½% ad val.

   \*       \*       \*       \*       \*       \*

Other (except the following: blowers; combination candy cutting and wrapping machines; cooking stoves and ranges; cordage machines; fans; flashlights; industrial cigarette making machines; internal-combustion engines of the non-carburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; tobacco cutting machines; and washing machines) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 13¾% ad val.

Paragraph 372, as modified by the Torquay protocol, *supra*:

Machines, finished or unfinished, not specially provided for:

  \*      \*      \*      \*      \*      \*      \*

Other (except the following: accounting machines; bakery machines; calculating machines; combination candy cutting and wrapping machines; combination cases and sharpening mechanisms for safety razors; cordage machines; food cutting or grinding machines; hydraulic impulse wheels and hydraulic reaction turbines; industrial cigarette making machines; internal-combustion engines of the non-carburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for manufacturing chocolate or confectionery; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; and tobacco cutting machines) _ _ _ _ _ _ _ _ _ _ _ _ _ _ 13¾% ad val.

At the trial, plaintiff called, as the only witness in the case, Fredrick J. Cherewick, the sole proprietor of the Conveyair Co., which manufactures pneumatic conveying equipment. He testified that the blower assemblies each consist of a blower and electric motor, mounted upon a common frame connected with a V-belt drive, as depicted on plaintiff's illustrative exhibit 1 and indicated by the number 1 placed thereon by the witness. The feeder assembly, which is also part of the importation, is identified by the number 2 on plaintiff's illustrative exhibit 1.

According to this witness, these items, together with a length of piping, form a mechanism for conveying sawdust, wood shavings, or pulp chips from one place to another in the following manner: The material is introduced into the feeder through a hopper-like opening at its top. As it falls to the bottom, it is pushed onto a tube, by means of an auger or screw, and then conveyed through the pipe by compressed air from the blower.

Cherewick stated that the feeder shown in plaintiff's illustrative exhibit 1 is driven by an electric motor but that the same model not only could be driven by other motive power, such as a gasoline engine, but actually has been so operated on many occasions. Concerning the blowers, Cherewick testified that they are pumps which produce air pressure to a higher degree than that developed by a fan. Each blower is bolted to a frame, together with an electric motor, and the

two are connected by a belt which drives the blower. However, identical blowers have been driven by a truck motor through a power takeoff.

On cross-examination, this witness admitted that the blower at bar was so constructed as to operate through power generated by an electric motor, bolted to the same frame and connected by a V-belt drive, and that an electric motor was also attached to the feeder by means of four bolts. The feeder, plus at least one blower assembly, constitutes the pneumatic conveying system.

He testified, further, that it would be very simple to remove the electric motor and substitute a gasoline, diesel, or other type of motor. All that would be necessary would be "to remove four bolts that hold the motor down to the frame and remove the belts that are connected on the pulleys or shives and attach a different type of an engine or motor onto that frame, which might require some adapting, and adjust the belt that may require different speed ratio, and it would do the same thing."

It appears from the uncontroverted evidence in this case not only that it is entirely feasible to operate the instant blower and feeder assemblies by other than electric power, but that, on many occasions, identical models have been so activated. Moreover, the procedure involved in detaching the electric motors and applying nonelectric power to permit the functioning of these mechanisms is simple and uncomplicated. In essence, it involved merely the removal of connecting bolts, possible adaptation of the frame on which the items are mounted, and the adjustment, when required, of the connecting belt to a different speed ratio. No modification of either blower or feeder, *per se*, is dictated.

The test of whether an article is provided for in paragraph 353 of the Tariff Act of 1930, or as modified by subsequent trade agreement, has been stated to be that "The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended." *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050. If an article has been designed to be operated by electrical power, and could not normally otherwise function, it is, of course, an article with an essential electrical feature, within the scope of said paragraph 353. If the substitution of a nonelectrical feature for the electrical one can be made without modification in whole or in part of the article designed to be used therewith, and after the substitution has been effected, the article will function normally for the purpose for which it was intended, the electrical feature is nonessential, and paragraph 353, *supra*, would not apply. *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. (Customs) 96, T. D. 47082.

In the statement of these alternatives, in view of the facts established at the trial of this case, lies a resolution of the issue here to be determined, to wit, whether the subject blowers and feeder are articles with essential electrical features. Although said articles are designed to be used with electrical power, their separate functions in conveying materials can, nevertheless, be performed normally and practicably when they are otherwise activated, and no modification of any of the features of either is required.

This last-mentioned factor is the element which distinguishes the instant case from the cases of *Star Brewery Co.* v. *United States*, 68 Treas. Dec. 82, T. D. 47800, and *Pacific Molasses Co.* v. *United States*, 3 Cust. Ct. 369, Abstract 42038, cited by counsel for the Government in his brief in support of the collector's classification of the merchandise at bar. It appears in each of said cases that the substitution of other than electric power for the operation of the particular machine in issue (brewing and bolting machines in *Star Brewery Co.* v. *United States, supra*; rotary molasses pump in *Pacific Molasses Co.* v. *United States, supra*) would have entailed, to some extent at least, the making of certain changes in their respective structures.

The adjustments required to replace the instant motors with gasoline or diesel engines were not in the "power-utilizing unit" but rather in the attachments which connect it with the "power-producing unit." For that reason, the following observations in the case of *Geo. S. Bush & Co., Inc.* v. *United States*, 41 C. C. P. A. (Customs) 33, C. A. D. 525, wherein certain power saws and their accompanying gasoline engines were held not to be entireties, are here considered to be pertinent:

The record indicates that different means of attachment might or would have to be employed from that used with the imported saws should the imported engine be detached and other power producing units used. There is absolutely no evidence however, appellant declares, that the engine itself must be altered to make it function as a power producing unit for various purposes which the engine will otherwise serve, nor that the sawing mechanism itself must be altered when propelled not by the gasoline motor but otherwise by compressed air or electric power.

\* \* \* \* \* \* \*

In the case at bar the gasoline engine is not indispensable as the power producing element in the operation of the saws because electricity or compressed air may likewise provide the power to effect the same result; that the gasoline engine may be readily detached from the saw assembly by the removal with a monkey wrench of four or eight nuts, depending on the model of the saw; that when so detached, or in the first instance, the gasoline engine may be used for various other purposes and in various other ways, such as driving a pump or propelling a motor boat.

While the instant record is without evidence of what use, if any, the electric motors would have, after detachment, it has, nevertheless, been made abundantly clear that they are not essential to the normal

functioning of the instant blowers and feeder and that the mere attachment of any other motive power would cause these mechanisms to operate as effectively. Accordingly, we are of opinion that the blowers and feeder are not articles having essential electrical features within the intendment of said paragraph 353, and the collector erred in so classifying them.

The same conclusion does not, of course, apply to the electric motors, which seem unquestionably to be articles having as an essential feature an electrical element or device and were so classified by the collector. They are named as exemplars in said paragraph 353, and no evidence is before us to show why they ought not to be covered by the provisions thereof.

Thus, we have in this case two separate tariff entities, to wit, blowers and a feeder, on the one hand, and electric motors, which are articles having essential electrical features within paragraph 353, *supra*, on the other. However, the appraisement of these articles was predicated upon the theory that each assembly constituted an entirety, and no separate values for each of these items has been returned by the appraiser. Accordingly, the appraisements herein were invalid and void. *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185; *United States* v. *Malhame & Co. et al.*, 39 C. C. P. A. (Customs) 108, C. A. D. 472. And the liquidations founded thereon are, likewise, invalid and void.

The instant protest, having been filed against a void liquidation, is premature and must be dismissed. *Pitman Publishing Corporation* v. *United States*, 28 Cust. Ct. 164, C. D. 1404; *Hughes Fawcett, Inc.* v. *United States*, 29 Cust. Ct. 1, C. D. 1434; *John P. Herber & Co., Inc.* v. *United States*, 30 Cust. Ct. 193, C. D. 1519.

This case is also subject to the provisions of 28 U. S. C. § 2636 (d), which read as follows:

If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values.

The matter is, therefore, remanded to a single judge to determine the proper dutiable values of the articles involved herein.

Judgment will be entered accordingly.