(C.D. 2107)

HENRY A. WESS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 30, 1959)

Tompkins & Tompkins (Allerton deC. Tompkins of counsel) for the plaintiff. George Cochran Doub, Assistant Attorney General (Henry J. O'Neill, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff protests the action of the collector of customs in classifying various items of woodworking machinery within the provisions of paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and the assessment of duty thereon at the rate of 13¾ per centum ad valorem.

It is claimed, in the alternative, that said items of merchandise should properly have been classified as machines, finished or unfinished, not specially provided for, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for which duty at the rate of 13 per centum ad valorem is provided, or that the motors forming part of each of the woodworking machines should be separately classified as motors within the provision therefor in paragraph 353 of said act, as modified by the Sixth protocol, supra, and subjected to duty at the rates of 11½ per centum ad valorem or 12½ per centum ad valorem.

For ready reference, the various provisions of the tariff act referred to are here set forth:

Paragraph 353, as modified by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors * * *:

    Batteries * * *

        *        *        *        *        *        *        *

    Other * * *_____ 13¾% ad val.

Paragraph 372, as modified by the Sixth protocol, *supra*:

Machines, finished or unfinished, not specially provided for:

    Adding machines * * *

        *        *        *        *        *        *        *

    Other * * *_____ 13% ad val.

Paragraph 353, as modified by the Sixth protocol, *supra*:

Articles having as an essential feature an electrical element or device * * *:

*        *        *        *        *        *        *

    Motors:

        Of more than $\frac{1}{10}$ horsepower but less than 200 horsepower _____ 11½% ad val.

        Other_____ 12½% ad val.

Although the protest, as filed, was directed in general terms against the classification of "certain woodworking machinery, machines, motors and similar merchandise," during the course of the trial, the case was limited to the following specific items of merchandise:

| Entry number | Item number and description |
|---|---|
| 264 | "1 No. 940–24″ Bandsaw With Dual Voltage Motor"<br>"6 No. 952 Single Spindle Shapers With 1⅛″ Spindles"<br>"1 No. 969–20″4 Side Planer-Matcher and Moulder" |
| 666 | "2 (two) Nr. 960–32″ * * * Thicknessers" |
| 1061 | "6 (six) Nr. 960–32″ Ball Bearing High Speed Single Surfacer, Thicknesser"<br>"3 (three) Nr. 940–24″ Bandsaw"<br>"1 (one) Nr. 916–20″ Ball Bearing Hand Planer, Jointer and Moulder" |
| 1408 | "2 (two) No. 916–20″ Ball Bearing Hand Planer, Jointer and Moulder" |

Charles Covert, associated since 1935 with the J. A. Fay & Egan Co. of Cincinnati, ultimate consignee of the merchandise in issue, was called to testify on behalf of the plaintiff. In describing his experience with the company, Covert stated that he had worked for approximately 2 years in the shop, later as a draftsman in the engineering department, and for the past 5 years as engineer in charge of woodworking machinery. His duties consist of making up the specifications from orders received from his company's sales department and determining the special parts or other parts required to be either made up, designed, or purchased for woodworking ma-

chinery. Although the main business of J. A. Fay & Egan Co. is the manufacture of woodworking machinery, the company also rebuilds all types of such machinery and offers its services as a job shop, manufacturing gears for outside concerns or for boring, turning, or planer work.

Covert testified that he is familiar with the uses and functioning of the articles in issue. He stated that each of the machines in controversy is a mechanism which is belt-driven and has a motor attached to it. In some cases, the woodworking belt-driven machines are sold without motors in the event that a customer would wish to furnish his own source of power, whether it be an electrically operated motor, a diesel- or gasoline-operated motor, or steam or other source of power. He stated that most people use the imported machines with the electric motors attached, since electricity is probably the easiest and most available and economical source of power.

In the case of the instant machines, said motors are affixed to the imported machines by means of four bolts inserted in the feet of the motors and to a hinged base. Sources of power other than electricity can be substituted to drive each of the machines in issue without any substantial alteration. The alteration would consist merely of removing the motor, by unscrewing the four bolts, and detaching the belt from the source of power to the driving pulley on the machine. The motors, when detached, can be used for other purposes, inasmuch as there is nothing about their construction which dedicates them to use on a particular machine. The variation in speed occasioned by use of a source of power other than an electric motor can be compensated for by varying the diameter of the pulley on the source of power supply without any change of the pulley on the woodworking machine. The alteration would, therefore, take place outside the machine itself.

It was Covert's testimony that the motors, which were imported with each of the machines in question, were more than $\frac{1}{10}$ horsepower but less than 200 horsepower.

There was received in evidence as plaintiff's exhibit 2 a diagrammatic sketch, entitled "FLOOR PLAN FOR MODEL No. 960 BALL BEARING SINGLE CYLINDER SURFACER," and as defendant's illustrative exhibit A there was received a pamphlet depicting various woodworking machines with the models presently in issue identified by the letters "A" through "E." The witness, Covert, explained that the illustration on illustrative exhibit A which is identified by the letter "D" does not correctly depict machine model number 969, for the reason that the motor is not attached to said machine.

The contention of plaintiff is that the electric motor accompanying each of the woodworking machines in issue is not "an essential feature" such as is required for classification of the machines and motors

as entireties within the purview of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, and that the machines and motors are separately dutiable.

Reference is made in plaintiff's brief to several cases in support of its contention, all of which have been considered by the court. Worthy of particular consideration is the case of *Clarence S. Holmes* v. *United States*, 37 Cust. Ct. 260, C.D. 1833, wherein certain blower and feeder assemblies with an accompanying electric motor were held not to be entireties and classifiable as electric articles in paragraph 353 of the tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802. In the course of its opinion in that case, the court stated—

The test of whether an article is provided for in paragraph 353 of the Tariff Act of 1930, or as modified by subsequent trade agreement, has been stated to be that "The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended." *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050. If an article has been designed to be operated by electrical power, and could not normally otherwise function, it is, of course, an article with an essential electrical feature, within the scope of said paragraph 353. If the substitution of a nonelectrical feature for the electrical one can be made without modification in whole or in part of the article designed to be used therewith, and after the substitution has been effected, the article will function normally for the purpose for which it was intended, the electrical feature is nonessential, and paragraph 353, *supra*, would not apply. *Ralph C. Coxhead Corp.* v. *United States*, 22 C.C.P.A. (Customs) 96, T.D. 47082.

The testimony of plaintiff's witness, Covert, in this case, a man experienced in the construction, use, and functioning of the woodworking machinery in issue, standing uncontradicted, discloses that the machines before the court may be powered by means other than by electricity, such as diesel, steam, gasoline, and so forth, by the simple expedient of removing the belt running from the motors to the driving pulleys on the machines, unscrewing the four bolts which attach the motors to each machine, and affixing a belt from any other power source to the driving pulley of the machines, the proper speed ratio of the several machines being maintained by the installation of an appropriate pulley on the power unit.

On the record before us and for the reasons above set forth, we are of the opinion that the instant woodworking machines together with their accompanying motors are not classifiable as articles having as an essential feature an electrical element or device within the purview of paragraph 353 of the tariff act, as modified, *supra*, as determined by the collector of customs but that said articles should properly have been classified separately.

Since the appraisement of the contested articles was predicated on the basis that each machine together with its motor constituted an entirely, no separate value for each of said items has been returned

by the appraiser. Accordingly, the appraisements herein were invalid and void and the liquidation of the entries was premature and a nullity, in view of the absence of a legal appraisement. It follows that the protest filed herein was likewise premature. We, therefore, dismiss the protest in accordance with the provisions of title 28, United States Code, section 2636(d), and remand the matter to a single judge to determine the proper dutiable value of the merchandise in the manner prescribed by law.

Judgment will be issued accordingly.