(C.D. 2671)

CONSOLIDATED INTERNATIONAL EQUIPMENT & SUPPLY CO. *v.*
UNITED STATES

United States Customs Court, Second Division

(Decided May 5, 1966)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb,* trial
attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This action is brought to determine whether the
classification and appraisement of certain paper cutters were proper.
The merchandise was classified by the collector of customs as articles
having as an essential feature an electrical element or device under
the provisions of paragraph 353 of the Tariff Act of 1930, as modified
by the Torquay Protocol to the General Agreement on Tariffs and
Trade, 86 Treas. Dec. 121, T.D. 52739, and assessed with duty at the
rate of 13¾ per centum ad valorem.

Plaintiff, by its protest and oral amendment thereto, claims that
the so-called electrical features are not essential and, accordingly,
the classification under said paragraph 353 was erroneous, and the
paper cutters, less the electric motors, should have been classified
under the machines provision as contained in paragraph 372 of the
Tariff Act of 1930, as modified by the Sixth Protocol of Supple-
mentary Concessions to the General Agreement on Tariffs and Trade,
91 Treas. Dec. 150, T.D. 54108, which provides for a rate of duty of
11½ per centum ad valorem. It is further contended by plaintiff
herein that said electric motors should have been properly classified
under the *eo nomine* provision for motors of more than ⅒ horse-
power but less than 200 horsepower, as contained in paragraph 353
of the Tariff Act of 1930, as modified by said sixth protocol, *supra,*
and as such dutiable at the rate of 10½ per centum ad valorem. It
is the position of plaintiff that, since the appraisement was made on
the basis of an entirety with no separate values given for the motors
and the machines, said appraisement is void, the liquidation premature

by virtue of the absence of a legal appraisement and the protest should be dismissed, and the matter remanded to a single judge to determine the proper dutiable value of the paper cutters and the motors in the manner prescribed by law.

The pertinent portions of the statutes involved herein read as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

  Other \* \* \*_____ 13¾% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by said sixth protocol, *supra:*

Machines, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

  Other (except food preparing and manufacturing machinery; hydraulic reaction turbines and hydraulic impulse wheels; internal-combustion engines; and except wrapping and packaging machinery) _____ 11½% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by said sixth protocol, *supra:*

Articles having as an essential feature an electrical element or device, \* \* \* finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

  Motors:
    Of more than $\frac{1}{10}$ horsepower but less than
      200 horsepower_____ 10½% ad val.

The record herein consists of the testimony of one witness called on behalf of plaintiff and a picture of the imported machine received in evidence as plaintiff's exhibit 1.

The president of plaintiff company, Mr. Benjamin Sugarman, testified that he is familiar with the paper cutters involved herein, RPM 130 and RPM 105, having imported them, sold them, and visited the factory where they are manufactured. The function of the paper

cutters is to cut and trim a ream of paper, which is accomplished by means of a cutting beam operated by a V-belt drive from an electric motor. The machine contains a motor to operate a hydraulic cylinder, one for driving the knife beam, and a third motor for moving the back gauge which can also be operated by a handwheel. These motors were marked A, B, and C, respectively, on plaintiff's exhibit 1. Motors A and B transmit their power by a V-belt and pulley arrangement. Motor A actuates the cutting knife and B the hydraulic cylinder which moves a clamp over the paper to hold it down while the cutting is being performed. The witness was of the opinion that motors A and B can readily be substituted by a gasoline engine in 4 to 6 hours at a cost of $30 to $40. By removing four bolts on each motor they can be readily removed and another motor mounted. Mr. Sugarman testified that these motors are standard or general purpose motors of 2 and 4 horsepower.

The motor marked C on plaintiff's exhibit 1, which enables the back gauge to bring up the ream of paper to the cutting position, is optional, and the imported article can be purchased with or without said motor. In addition to the motors, there is an electric eye used as a safety device which the witness marked with the letter D on plaintiff's exhibit 1. The electric eye was considered by Mr. Sugarman as an optional accessory, and he indicated that 95 percent of the paper cutters were not equipped with electric eyes. The electric switchbacks contained on the imported article are connected to the motor and not to the machine. On questioning by the court, the witness stated that he had never actually seen merchandise such as exhibit 1 except with electric motors but they can be operated manually and electrically.

Based upon the record as made herein describing the operation of the imported paper cutters, it is apparent that they fall within the common meaning of the term machine as interpreted in *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786; *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820. However, in their condition as imported, they contained certain electrical elements and were, accordingly, classified under paragraph 353 of said act, as modified, *supra*.

The issue presented to the court is whether the imported paper cutters have as an essential feature an electrical element or device. The case of *United States* v. *Dryden Rubber Company*, 22 CCPA 51, T.D. 47050, is the leading authority governing the issue involved herein. Under the *Dryden* case, *supra*, for an article to fall within the purview of, "having as an essential feature an electrical element or device," such feature must be essential and without which the article will not

function normally for the intended purpose. This court in the case of *Keer, Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336, in citing the *Dryden* case, paraphrased the requisites as follows: "In other words, if an article has been designed to operate by electrical power, and cannot normally function otherwise, it is an article with an essential electrical feature * * *. If, however, the substitution of nonelectric features for the electrical ones can be made without substantial modification or reconstruction of the functional properties of the machine, it is not an article having as an essential feature an electrical element or device within the meaning of said paragraph 353." See also *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA 96, T.D. 47080; *W. C. Sullivan Company* v. *United States*, 46 Cust. Ct. 31, C.D. 2229.

In the case at bar, the record establishes that the driving motors, those items marked A and B on plaintiff's exhibit 1, may be readily removed and replaced with other sources of power by simply removing four bolts on each motor and detaching the V-belt from the pulley.

The transmission of power by a belt and pulley arrangement was considered in the case of *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714, which involved a cocoa liquor grinding mill powered by an electric motor, which was not imported, and held by the appellate court not to fall within the purview of paragraph 353. The court therein made the following comment:

* * * In this day and age the water wheel and steam engine have passed from the commercial scene insofar as the operation of factory machine tools is concerned. One need not look far to discover that almost every machine in a factory is operated by an electric motor as a practical commercial matter. If this fact is to be taken into consideration in construing paragraph 353 then the humblest wood-turning lathe and every other device having a pulley or sprocket on it for the attachment of a drive belt or a chain is going to become an "article having as an essential feature an electrical element or device" because, practically, it is going to be operated by electrical motive power if it is operated at all.

* * * Any source of adequate power connected to that pulley to rotate the shaft would run the machine. Except for practical and commercial considerations, in the operation of a chocolate factory in a given location, the power source would be immaterial. Selection of an electric motor did not make the grinding mill an essentially electrical article. * * *

In view of the foregoing, we are of the opinion that the driving motors, those marked A and B on plaintiff's exhibit 1, may be readily removed and the power substituted without a substantial modification or reconstruction of the functional properties of the paper cutters and, accordingly, such paper cutters are removed from the language of

paragraph 353 of said act, as modified, *supra*, with respect to these motors.

The back-gauge motor marked C on plaintiff's exhibit 1 and the electric eyes marked D on plaintiff's exhibit 1, have been established to be optional features without which the imported paper cutters can operate. The back gauge can be and is in fact manually operated and the record establishes that 95 percent of the paper cutters do not contain the electric eye. Accordingly, said features are not essential to the operation of the imported machine.

The record establishes that the electric switch is connected to the motors and not to the machine. It necessarily follows that with a substitution of electric power the switches become functionless and are, therefore, not essential to the operation of the imported paper cutters.

Since the record establishes that said paper cutters do not have as an essential feature an electrical element or device, and do fall within the purview of the term, "machine," as contained in paragraph 372 of said act, as modified, *supra*, they should have been properly subject to duty thereunder.

The claim under the *eo nomine* provision for motors of more than 1/10 horsepower but less than 200 horsepower under paragraph 353 of said act, as modified, *supra*, is well founded, by virtue of the decisions in *Henry A. Wess, Inc.* v. *United States*, 43 Cust. Ct. 78, C.D. 2107; *Clarence S. Holmes* v. *United States*, 37 Cust. Ct. 260, C.D. 1833; and *Geo. S. Bush & Co., Inc.* v. *United States*, 41 CCPA 33, C.A.D. 525.

The instant record establishes that the 2 and 4 horsepower motors involved herein are general purpose or standard motors and, therefore, obviously not specifically designed for use with the imported paper cutters. See *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849.

In view of the foregoing, said motors should have been properly subject to duty under the *eo nomine* provision for motors of more than 1/10 horsepower but less than 200 horsepower contained in paragraph 353 of said act, as modified, *supra*, as claimed.

Since the appraisement of the paper cutters was predicated on the basis of an entirety, no separate value has been returned upon the machines and the motors. Accordingly, the appraisement herein is null and void and the liquidation of the entry premature and a nullity by virtue of the absence of a legal appraisement. The protest is, therefore, dismissed in accordance with the provisions of 28 U.S.C., section 2636(d), and the matter remanded to a single judge to determine the proper dutiable value of the paper cutters and electric motors separately in the manner prescribed by law.

Judgment will be entered accordingly.